444 So.2d 547 (1984)
The INTEREST OF K.H. and M.C. a/K/a M.H., Dependent Children.
No. AQ-355.
District Court of Appeal of Florida, First District.
January 25, 1984.
*548 Mary K. Williams and Christina A. Zawisza, Jacksonville Legal Aid, Inc., Jacksonville, for appellant.
Jim Smith, Atty. Gen. and James A. Peters, Asst. Atty. Gen., for appellee.
JOANOS, Judge.
Appellant, the natural mother of K.H. and M.C. a/k/a M.H., appeals a final order reaffirming the dependency of her two minor children and among other things, relieving the Department of Health and Rehabilitative Services (HRS) of supervision over the children. We affirm the holding that dependency status should continue, but reverse the termination of supervision.
The mother is a twenty-seven year old woman whose hearing and speech are impaired. In 1976, the two children she had at that time were adjudicated dependent due to her excessive dependency upon alcohol and custody was placed away from the mother. K.H., a son, is now twelve and is currently in the custody of his godmother. M.C., a daughter, is ten and in the custody of a paternal aunt. In addition, the mother now has a three year old daughter who has been in her custody since birth.
On March 4, 1981, the mother filed her first motion for change of placement seeking to have K.H. and M.C. returned to her. Investigation and a home study were ordered on March 10, 1981. Psychological and social evaluations indicated that the two children should remain with their present custodians. It was recommended *549 they be reunited with the mother, their sibling and each other through frequent and regularly scheduled visits in the mother's home. Subsequent review hearings in May and July, 1982, resulted in orders maintaining custody with the current custodians. The last review hearing was held in October, 1982. Evidence showed the children's strong attachments to their respective custodians and the failure of plans for visitation between the mother and the children. The trial court reaffirmed the dependency of the children, continued their current custodial care, granted the mother reasonable visitation, and relieved HRS of supervision.
The legislature has been clear in expressing the attitude that is to be taken in regard to dependent children such as K.H. and M.C. In Section 39.001(2)(b) and (c), Florida Statutes (1981), two of the primary purposes of the Florida Juvenile Justice Act (Chapter 39) are described as:
(b) To assure to all children brought to the attention of the courts, either as a result of their misconduct or because of neglect or mistreatment by those responsible for their care, the care, guidance, and control, preferably in each child's own home, which will best serve the moral, emotional, mental, and physical welfare of the child and the best interests of the state.
(c) To preserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or the safety and protection of the public cannot be adequately safeguarded without such removal; and, when the child is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents; and to assure, in all cases in which a child must be permanently removed from the custody of his parents, that the child be placed in an approved family home and be made a member of the family by adoption. (emphasis supplied)
This means that the welfare of the dependent child is the supreme consideration. Consistent with that overlying philosophy is the requirement that every reasonable effort to reunite the child with the family should be taken. See also Section 409.145, Florida Statutes (1981). However, when those efforts have been exhausted and it is determined that the child should be permanently removed from parental custody, then adoption of the child by a suitable family becomes the goal. See Section 39.41(1)(f), Florida Statutes (1981). In other words, so long as a child occupies the status of a dependent child under Chapter 39 there should be a definite plan or effort to reunite the child with its parent(s). If that is not reasonably possible then the termination of parental rights and adoption should be sought. A permanent status of dependency is not an option available under Chapter 39.
The trial court did not act contrary to the purpose of Chapter 39 when, under the circumstances of this case, the Circuit Judge denied a change of custody. To warrant a change of placement, the burden is on the movant, here the mother, to demonstrate that there has been sufficient change in the conditions and circumstances in her life to persuade the court that the best interests of the children would be served by returning custody of the children to her. In Interest of W.H., 356 So.2d 34 (Fla. 1st DCA 1978). There is substantial, competent evidence to support the trial court's decision that the mother has failed to meet this burden.
The trial judge has broad discretionary power in this case to determine what is in the best interest of K.H. and M.C. In Re R.J.C., 300 So.2d 54, 55 (Fla. 1st DCA 1974).
Although the trial judge stated that the mother was not an unfit mother and no longer had an alcohol problem, he did not believe that she was ready to assume custody of all three children. In addition, the trial judge found that the mother had not been involved in the lives of her children during the six years they were separated. *550 She did not know where her children went to school and she turned down several opportunities to visit with them, when she was not able to have them on her exact terms. As the trial judge correctly observed "[t]his is not a sign of great emotional attachment." We likewise approve the trial judge's continued efforts to promote visitation between the mother and the children. The judge has not given up on the idea that the children may in the future be returned to their mother. Therefore, further efforts at restoration of the relationship between mother and children is required.
This court in In the Interest of V.M.C., 369 So.2d 660 (Fla. 1st DCA 1979) recognized:
the legal principle that in proceedings of this character [dependency cases] the primary consideration of the juvenile court must be the best interest of the child. However, the natural parent has a right to family integrity which must not be treated lightly and such parent should not be deprived of reasonable right of visitation with the hope of restoring future custody and control of the child to the natural parent when future circumstances and the welfare of the child justify the same.
Id. at 662.
Because there is still a reasonable possibility of reuniting the children with their mother, termination of parental rights and adoption at this point is still not an acceptable option.
We have determined, however, that it was error to terminate the HRS supervision of the children in this case. K.H. and M.C. are entitled to HRS supervision because they are still dependent. Section 409.145(2)(a), Florida Statutes (1981), provides that the following children are entitled to HRS assistance:
[a]ny child who has been temporarily or permanently taken from the custody of his parents, custodians or guardians in accordance with those provisions in Chapter 39 that relate to dependent children.
The statute speaks in broad terms and when Section 409.145, Florida Statutes (1981), is read as a whole, it is clear that the legislature did not intend to differentiate between classifications of dependent children.
Fla. Admin. Code Rule 10M-5.01 provides:
[t]he purpose of casework in protective services is to ensure the continued protection of the child while providing counseling and related support services designed to maintain the family unit while assisting parents in developing the skills required to meet the minimum needs of their child.
Based upon the above, we hold that HRS supervision was incorrectly terminated in this case. To hold otherwise would prevent equal treatment between classifications of dependent children, without any logical reasons related to the goals and objectives of sections 39.001, 409.145, Florida Statutes (1981). Further, HRS supervision should be continued and utilized in developing and enforcing definite plans and efforts aimed at the future restoration of the custody of the children with their natural mother. See In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA, 1983).
Accordingly, the trial court's final order is AFFIRMED, inasmuch as it orders continued dependency, continued custody with the present custodians, and reasonable visitation. The discontinuation of HRS supervision is REVERSED and this cause is REMANDED for further proceedings consistent with this opinion.
LARRY G. SMITH, J., concurs.
WENTWORTH, J., concurring specially with opinion.
WENTWORTH, Judge, concurring specially.
I agree with the majority's disposition of the case and statement of the points affirmed and reversed, but am uncertain that *551 the trial judge intended to find the "continued dependency" which we affirm and which I believe is required to support the continued custodial placements. The order states:
I do not find that the mother is an unfit mother. She is taking care of a younger child and has completed the requirements of the HRS Developmental Services. Therefore, I cannot conclude that she is unable to take care of children. I do not think that the mother has an alcoholic problem or she would have not been able to raise the younger child. It is doubtful if she could have provided the required care to [S] if she had custody of [K] and [M].
Although other evidence noted by the order will support a conclusion that continued supervision in custody separate from the mother is necessary to protect the children from neglect, that standard is not articulated.[1] Since we remand for further proceedings, it seems to me appropriate to note that statutory standard as the principle by which the court's broad discretion is to be guided, and by which the mother's burden of proof is to be measured.
NOTES
[1] Instead the order on appeal simply recognizes that "the disposition order ... can be changed from time to time as determined by the best interests of the children," and concludes "the children are better off outside of [the mother's] home at this particular time." The court's refusal to find that appellant was, in general, an "unfit mother" does not, of course, dictate a determination of fitness for the specific purposes in question. Cf., Pape v. Pape, 444 So.2d 1058 (Fla. 1st DCA, 1984); In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA, 1983).