700 So.2d 71 (1997)
S.J., natural mother of M.J., a minor child, Petitioner,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Respondent.
Nos. 97-432, 97-1683.
District Court of Appeal of Florida, First District.
September 26, 1997.
*72 Steven P. Seymoe of Ausley & McMullen, Tallahassee, for Petitioner.
Laura E. Anderson, Assistant Legal Counsel, Department of Children and Families, Tallahassee, for Respondent.
JOANOS, Judge.
S.J., the natural mother of M.J., a minor, petitions for certiorari review of two circuit court postdependency orders: (1) an amended order on shelter review in Case No. 97-432, in which the court applied a "best interest of the child" standard in its determination to remove a child previously adjudicated dependent from the mother's home, and to place the child with an adult relative; and (2) an order terminating protective supervision of the Department of Children and Family Services (Department) in Case No. 97-1683, and approving a change of goal from reunification of the child with the parent to long-term relative placement. The petitioner/mother maintains the circuit court applied an erroneous standard in removing the child from the mother's care and custody, and erred in placing the child in long-term relative *73 placement without adherence to the statutory requirements. We agree, and grant the petitions for certiorari in both cases.
The adjudication of dependency in this case occurred in 1988, based upon the circuit court's determination that M.J.'s stepfather meted out excessive corporal punishment to M.J.'s half sister.[1] On February 4, 1991, the Department's protective supervision was terminated as to the mother, based upon a determination that she had completed counseling and had satisfied the other conditions imposed by the Department for reunification of the mother with her child. M.J.'s stepfather was not permitted to return to the family at that time, due to his failure to meet all of the Department's requirements.
In July 1993, the mother requested Department approval of a change in custody of M.J. and her half sisters from the mother to the maternal grandfather and his wife, due to the mother's temporary unemployment. In December 1993, the mother petitioned for return of her children to her care. In February 1994, the Department submitted a report to the circuit court which indicated the petitioner's voluntary placement of her children with her father and stepmother had proved to be a mistake, because of the poor relationship between the petitioner and her stepmother. M.J.'s subsequent placement with her maternal aunt apparently posed no problems. The child's half-sisters had been placed with their father, with week-end visitation with the mother, petitioner herein.[2]
In June 1996, M.J. was returned to her mother's custody, but remained under the protective supervision of the Department. The circuit court found the mother had substantially complied with the terms of the case plan, and further found the reason for removal of the child had been remedied to the extent that the child's safety and well-being would not be endangered by a return to her mother's custody.
On October 10, 1996, the Department petitioned for detention of M.J., alleging that within one month of M.J.'s return, the mother returned to a relationship which formerly had involved domestic violence. The Department alleged that M.J. "was very upset by her mother's resumption of the relationship with Mr. Collins." M.J. asked the Department to return her to her aunt's home "where she feels safe." [3] The petition further states:
3. Last month, [the mother] married Johnny Collins, who is her stepbrother. On 10/9/96, [the mother] & Johnny Collins engaged in domestic violence to the extent that Johnny Collins ordered [the mother] out of his car and when she refused, he tried to physically remove her. [M.J.] was in the car at the time. This is not the first episode of violence since [M.J.] has returned home.
4. Since returning to her mother's care, [M.J.] has missed at least six days of school this year and her grades have dropped.
On October 11, 1996, the circuit court entered an order placing M.J. in shelter care. At that time, the Department recommended return of M.J. to the custody of her maternal aunt, and exploration of permanent placement for her. The report of the guardian ad litem indicated that M.J. possessed a good understanding of the issues of the case, but appeared to have mixed emotions concerning the possibility of termination of her mother's parental rights. M.J. wanted the stable environment provided by her aunt, but also wanted to see her mother. The guardian noted a strong attachment between M.J. and her aunt and uncle.
*74 On December 27, 1996, the circuit court entered the amended order on shelter review which is the subject of the petition for certiorari review in Case No. 97-432. The order states that at the hearing held October 28, 1996, the court spoke with the child in chambers in the presence of the attorneys and the guardian. The mother's counsel argued the standard for removal of the child from the mother's custody should be related to the safety of the child. The Department argued the court should use a "best interest of the child" standard to determine M.J.'s placement. The circuit court directed the attorneys to brief the appropriate standard for determination of a child's placement after a child has been previously adjudicated dependent. Upon consideration of the memoranda submitted by the parties, the court determined that "a best interest of the child" standard was appropriate for placement of a child subsequent to adjudication of dependency. Paragraphs 9 and 10 of the order state:
9. The Court further finds from talking with the child that the child was affected by the domestic disturbance she witnessed between the Mother and her new Husband. The Court will not place or return a child to any home in which there is domestic violence. The Court does note that when specifically questioned by the mother's counsel, the child indicated that she herself was not hurt, or in fear of being hurt at any time as a result of the incident in October 1996; rather, the child indicated that she did not want to live with her mother for fear her mother might be harmed.
10. It is in the best interest of [the child], given the material change in circumstances in her natural mother's home, to have her temporary care, custody, and control placed with her aunt, ...
The mother then filed an affidavit opposing the removal of M.J. from her care and custody. The mother detailed the number of counseling sessions she had undergone with M.J. and with her husband, and explained the efforts she and her husband had made to apply the dispute resolution techniques discussed in those counseling sessions. The mother's affidavit also described the events leading up to the October 10, 1996, argument between herself and her husband which led to M.J.'s contacting the Department and requesting a change in custody. According to the affidavit, when the argument commenced, the mother sent M.J. into her maternal grandfather's house. The mother asserted that M.J. was never in any danger during the argument, and the argument did not involve blows or threats to strike. The mother's affidavit suggested M.J. contacted the Department in order to avoid certain rules imposed upon her by the mother and her new husband.
At the hearing on the mother's affidavit, the circuit court accepted the case plan update submitted by the Department. The plan update changed the former goal of reunification with the mother to long-term relative custody, terminated protective supervision, and provided that the circuit court would retain jurisdiction. On March 31, 1997, the circuit court entered an order implementing the oral pronouncements made by the court at the hearing. This latter order is the subject of the petition for certiorari review in Case No. 97-1683.
As to the order entered in Case No. 97-432, we agree with the petitioner that the circuit court erred in applying a "best interest of the child" standard to the determination of placement of the child subsequent to the previous adjudication of dependency. The applicable provision, section 39.41(2)(a)9., Florida Statutes, states:
(2)(a) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child has the power, by order, to:
....
9. a. Change the temporary legal custody or the conditions of protective supervision at a postdisposition hearing subsequent to the initial detention hearing, without the necessity of another adjudicatory hearing. A child who has been placed in the child's own home under the protective supervision of an authorized agent of the department, in the home of a relative, in the home of a nonrelative, or in some other place may be brought before the *75 court by the agent of the department who is supervising the placement or by any other interested person, upon the filing of a petition alleging a need for a change in the conditions of protective supervision or the placement. If the parents or other custodians deny the need for a change, the court shall hear all parties in person or by counsel, or both. Upon the admission of a need for a change or after such hearing, the court shall enter an order changing the placement modifying the conditions of protective supervision, or continuing the conditions of protective supervision as ordered.
b. In cases where the issue before the court is whether a child should be reunited with a parent, the court shall determine whether the parent has substantially complied with the terms of the case plan to the extent that the well-being and safety of the child is not endangered by the return of the child to the home. (Emphasis supplied).
Courts lack authority to deviate from statutory requirements as to placement of a dependent child. See Roberts v. Department of Children & Families, 687 So.2d 51 (Fla. 3d DCA 1997); C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA), review denied, 680 So.2d 424 (Fla. 1996). If a parent requests custody of a child, "the court shall place the child with the parent unless it finds that such placement would endanger the safety and well-being of the child." § 39.41(1), Fla.Stat. (Emphasis supplied). "Contrary to the department's position here, the statute does not permit an independent judicial consideration of the `best interests' of the child." Roberts, 687 So.2d at 51.
In this case, the circuit court expressly recognized that Chapter 39 "imposes an abuse, abandonment, or neglect standard" with respect to adjudication of dependency, but adopted the Department's argument that a "best interest of the child" standard is applicable in a subsequent hearing. As support for its position, the Department has cited us to two cases, In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA 1983), and In the Interest of K.H., 444 So.2d 547 (Fla. 1st DCA 1984). A complete reading of these cases demonstrates that neither will support the meaning urged by the Department. For example, in A.B., the court discussed In the Interest of C.M.H., 413 So.2d 418 (Fla. 1st DCA 1982), in which the court adopted the words used by Circuit Judge Safer "that a determination of dependency `became res judicata during all further proceedings,' and `the issue of dependency was laid to rest.'" The C.M.H. court went on to find that logic dictated that only "the best interest of the child" remained to govern the choice between restoring the child to the parent or continuing foster care, or committing the child permanently to the Department for adoption.
In A.B., the court expressly refused to construe C.M.H. as installing "`the best interest of the child' as a license for permanent commitment, or for continuing foster home care, if the child is not in fact presently dependent by parental abandonment, abuse or neglect." 444 So.2d at 992. The court further stated:
Conceding a superficial conflict between our view of statutory requirements and the court's analysis in C.M.H., the conflict is of no consequence if, as appears, C.M.H. simply poured meaning from the broad concepts of abandonment, abuse, and neglect into a broader concept, "the best interest of the child." If C.M.H. intended rather that "best interest of the child" in foster care should be a freestanding test, indeterminate except from an individual judge's value system, we respectfully disagree. 444 So.2d at 993. (Emphasis supplied.)
The Department also relied upon The Interest of K.H., 444 So.2d 547 (Fla. 1st DCA 1984). In K.H., the court quoted section 39.001(2)(b) and (c), to illustrate legislative intent that "the welfare of the dependent child is the supreme consideration. Consistent with that overlying philosophy is the requirement that every reasonable effort to reunite the child with the family should be taken." 444 So.2d at 549. The court further stated: "To warrant a change of placement, the burden is on the movant, here the mother, to demonstrate that there has been sufficient change in the conditions and circumstances in her life to persuade the court that the best interests of the children would be *76 served by returning custody of the children to her." Id. Although the court used the "best interest" term in its overall sense, the opinion will not support an interpretation that "best interests of the child" is the test for a determination whether a child previously adjudicated dependent should be returned to the custody of the natural parent.[4]
The documents furnished by the parties establish that M.J. was returned to her mother based upon the Department's determination that the mother had substantially complied with all the terms and conditions of the case plan. In the order placing M.J. with her maternal aunt, the circuit court made no finding that the child's well-being and safety would be endangered if she remained in her mother's home. See § 39.41(2)(a)9.b., Fla. Stat. As the party moving for change in placement of the minor child, the Department had the burden to show that the child's safety was endangered by remaining in her mother's home. While it is true that "best interest of the child" is the overriding concern of all of Chapter 39, the Legislature has not adopted "the best interest of the child" as the legal standard for determination of a change in placement of a dependent child. See § 39.41(2)(a)9.b., Fla.Stat.
The second order for which petitioner seeks certiorari review effected long-term placement of M.J. with her maternal aunt and terminated Department supervision. Pursuant to section 39.41(2)(a)3. and 5.a. and b., long-term placement with an adult relative is a placement option available to the circuit court, if the court finds the parents failed to comply with a case plan and the court determines at a judicial review hearing held pursuant to section 39.453, that neither reunification, termination of parental rights, nor adoption is in the child's best interest. See In the Interest of S.H.P., III, 593 So.2d 536, 539 (Fla. 1st DCA), review denied, 601 So.2d 553 (Fla.1992); In the Interest of J.Z., 636 So.2d 726, 728 (Fla. 2d DCA 1993). Nevertheless, such placement is proper only after the statutory requirements have been satisfied.[5]
In this case, the circuit court previously determined that the mother was in compliance with her case plan, and made no subsequent finding of non-compliance. Further, neither the December 27, 1996, amended order on shelter review nor the March 31, 1997, order accepting case plan update sets forth findings that the child's well-being and safety would be endangered by the return of the child to the mother's home.
Accordingly, we grant the petitions as to both cases and quash the December 27, 1996, order in Case No. 97-432, and the March 31, 1997, order in Case No. 97-1683. The cause is remanded for further proceedings to determine whether the child's well-being and safety would be endangered by a return to the parental home, or for reinstitution of supervision with a goal either of reunification or of termination of parental rights. If the circuit court again determines that long-term relative placement is the appropriate disposition in this case, such placement must adhere to the statutory requirements, including the findings required for the change in custody.
BOOTH and VAN NORTWICK, JJ., concur.
NOTES
[1] The petition for dependency indicated that M.J.'s then two year-old half sister "received a bruise to her buttocks area after a spanking by her father." The report further stated that the children had missed several scheduled medical appointments, and there was evidence of alcohol abuse and marital conflict in the home which allegedly prevented appropriate care of the children.
[2] Custody of M.J.'s half sisters is not an issue in these consolidated petitions for certiorari.
[3] The Department noted that M.J. also was concerned that her mother's work schedule required her mother to awaken M.J. at 4:30 a.m., and leave her at her grandmother's house to catch the school bus at 6:30 a.m.; and the child was concerned that there was not enough food in the house.
[4] We are cognizant that section 39.41 has been amended several times since A.B. and K.H. were decided. However, the subsequent amendments have not altered the principles expressed in the cited cases.
[5] Section 39.41, Florida Statutes, is a complex provision which sets forth the placement alternatives available to the court for placement of a child who has been adjudicated dependent. Each placement alternative has certain procedural requirements which must be met before the child's custody may be placed with one other than the natural parent. Although the order entered in this consolidated case in Case No. 97-1683 is in substantial compliance with section 39.41(2)(a)3., the order does not address each of the conditions enumerated in section 39.41(2)(a)5.a. and b. and section 39.41(2)(b).