790 So.2d 1239 (2001)
L.L.C. Mother of C.L., C.L., B.L., and C.L., etc., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
Nos. 5D00-3454, 5D01-167.
District Court of Appeal of Florida, Fifth District.
August 10, 2001.
*1240 R. Mitchell Prugh, Melrose, for Appellant.
H. Stephen Pennypacker, Contract Counsel, Pilot Project Department of Children and Family Services, District 3, CWLS, Gainesville, for Appellee.
SHARP, W., J.
The mother, L.L.C., appeals from an order which changed the goal of her case plan regarding her four children, C.L., C.L., B.L. and C.L., from reunification to long term placement. The order is titled "Order on Long Term Relative Placement and Terminating Protective Supervision." We affirm the custody and dependency status of the children, but direct the lower court to suspend its decision of permanency for one year and continue an appropriate case plan.
The facts in this case are unusual. The children were sheltered in October 1999 because the man with whom L.L.C. was living, Bobby Crocker (whom she later married), was accused of having physically and sexually abused his own daughter. The Department felt he posed a risk to these four children.
The parties went to mediation and the mother consented to adjudication of the children as dependent. They were placed with a series of relatives. After the mother married Crocker, additional mediation ensued to amend the case plan. Both L.L.C. and Crocker agreed to case plans. Crocker agreed to follow any recommendations of Dr. Neidigh, and the mother agreed to her case plan, which she successfully completed. The goal continued to be one of reunification.
Pursuant to Dr. Neidigh's recommendation, Crocker agreed to take a polygraph test, which the examiner concluded he had responded to with deception when questioned about improper sexual contact with the three daughters of L.L.C. Based on this test result, the Department determined reunification was not possible and it staffed the case for permanency with its adoptions unit.
L.L.C. filed a motion for reunification, based on the successful completion of her case plan. An evidentiary hearing was held in November 2000. Over the mother's objection, the court received many reports and hearsay statements, including the result of the polygraph test. Dr. Neidigh testified at the hearing via telephone that if the court found the allegations of sexual abuse were unfounded, Crocker would not have to undergo sex offender treatment. He recommended such treatment if the court believed the allegations, *1241 but he also said he thought Crocker's prognosis was good. The daughters reported to their caseworker that Crocker had not sexually abused them, although there was some evidence that they were coached. Various caseworkers for the Department and the guardian ad litem recommended against returning the children to their mother with Crocker present.
The trial court determined that improper sexual contact with the children had taken place and that the mother likely would not be able to protect them from the risk of future abuse. It found that Crocker had failed to follow the recommendations of Dr. Neidigh in seeking therapy for psychosexual issues, although Dr. Neidigh had not recommended that therapy before the judge's ruling. Thus the court placed the children with a step-grandmother on a permanent basis. It also provided that:
7. The parents shall not petition the Court for custody of the children unless there is probable cause to believe that this Long Term Custody is no longer in the children's best interest, and that the parents have demonstrated a material change in circumstances. Substantial compliance with a case plan or the remedy... reasons for removal will not, standing alone, be sufficient grounds to disturb this Long Term Custody.
8. Custody shall not be returned to either parent unless and until the parent proves that the Long Term Relative Placement is no longer in the best interest of the children and that the parent has had a material change in circumstances.
The court was conducting a hearing pursuant to section 39.701(8)(b), which provides that the court shall return a child to the custody of its parents when it determines that they have substantially complied with the case plan and if the court is satisfied that the reunification will not be detrimental to the child's safety, well being, and physical, mental and emotional health. Another requirement is the statute's directive that the case plan be completed within twelve months from shelter unless extraordinary circumstances exist. § 39.701(8)(f), Fla. Stat. The twelve-month period here extended between October 21, 1999 and October 21, 2000. L.L.C. had successfully completed her case plan. Because of her marriage to Crocker and the fact that her plan had not been changed to address those problems which the marriage created, and which were known to the Department, the court believed it could not return the children to her. The court also felt it was out of time to allow a revision of the case plan.
L.L.C. argues that pursuant to section 39.622(1), the court did not have the option of disposing of this case by a permanency determination. The statute gives the court that option when "the parents have either consented to long term custody, had their parental rights terminated, or failed to substantially comply with a case plan and the court determines at a judicial review hearing or at an adjudication hearing held pursuant to the chapter that reunification is not in the best interest of the child." § 39.622(1), Fla. Stat. See S.J. v. Department of Health and Rehabilitative Services, 700 So.2d 71 (Fla. 1st DCA 1997).
L.L.C. also argues it is fundamentally unfair for the court to adopt a case plan more than six months after the children's removal from the home when tasks require more than twelve months to complete and the court adheres rigidly to the twelve-months limit in the statute. L.L.C. had completed her plan, but from the evidence in the record it is not clear that Crocker had failed his plan. He had complied with all the requirements of his plan except *1242 obtaining sexual psychotherapy which was not ordered until the hearing itself took place. We question whether there was sufficient evidence to convince the court at this point against reunification of the family based on failure to comply with a case plan.
In addition, the order entered in this case goes beyond the normal order entered in a permanency determination. The statute provides permanency may be ordered based on "competent evidence" not "clear and convincing evidence." The lesser standard was probably met in this case. Termination of parental rights requires the latter higher standard of proof. Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). But the order in this case approaches the termination of L.L.C.'s parental rights. It permanently divests her of the care, custody and control of her children, severely restricts her contact with her children as quoted above, and places substantial restrictions on her ability to legally regain custody of her children.
We think a less drastic remedy should have been selected in this case. See In Interest of M.F., 770 So.2d 1189, 1192 (Fla. 2000). The court should extend and modify the case plan to encompass the possibility of reunification of the children with their mother should Crocker successfully complete a recommended treatment program and should he pose no risk to the children or threat to them, or should L.L.C. make alternative, separate living arrangements for herself and the children apart from Crocker.
REVERSED and REMANDED.
THOMPSON, C.J., and HARRIS, J., concur.