DAVIS, Judge.
A.L., the mother of J.C. and W.B.C., challenges the trial court’s order that placed the children in long-term relative placement and denied her any further contact with her sons. We find the denial of all contact with the children was an abuse of discretion and reverse that portion of the trial court’s order. We affirm the remainder of the order.
In October 1999, A.L. left her two sons unattended in a motel room while she attended a sporting event. The Department of Children and Family Services (DCF) sheltered the children with the maternal grandmother. Upon A.L.’s consent to the petition for dependency, the trial court adjudicated the children dependent and approved the case plan submitted by DCF. The order of adjudication and the case plan allowed A.L. to have unsupervised daytime visits with the two children.
After receiving her case plan, A.L. moved to Ohio and began to complete the tasks of the plan. However, while residing in Ohio, A.L. only visited the children three times and had limited phone contact with them. On March 24, 2000, the trial court entered its order seeking Ohio’s compliance with the interstate compact. Pursuant to the compact, Ohio authorities were to perform a home study on A.L.’s living arrangements and offer a recommendation as to whether A.L. could adequately provide for her children should they be returned to her.
DCF submitted a judicial report in June 2000, indicating that A.L. had completed a parenting class in Ohio and that DCF had received a certificate of completion. However, DCF indicated in the report that it was unsure whether the class complied with the case plan. The report also advised that A.L. had undergone the psychosocial evaluation required by the case plan, but DCF had not received the written report. For the remaining items in the case plan, DCF reported either compliance or partial compliance.[1] The report cited the need for the home study by the Ohio *1096 authorities as the “barrier” to A.L.’s reunification with the children.
In the September 2000 judicial review report, DCF stated that Ohio was unwilling to proceed with the home study until A.L. had resolved her pending Florida criminal charges of child abandonment stemming from the incident that led to the original sheltering of the children. In October 2000, A.L. resolved her criminal case by entering a plea and being placed on probation.
On October 3, 2000, a permanency hearing was held. DCF recommended that the trial court terminate protective supervision and that the children remain with the grandmother. At that hearing, the grandmother vigorously expressed her opposition to A.L.’s continued visitation with the children. She said that the children seemed to regress after each of the visits and noted that the boys were in counseling for “the emotional things they have gone through.” She further indicated that she was unwilling to supervise any visits and did not want A.L. at her home.
At the conclusion of the hearing, the trial court suspended all further contact between A.L. and the children, including telephone calls by A.L., until the therapist had an opportunity to testify before the trial court. The trial judge instructed A.L.’s attorney to file a motion seeking visitation and to set it for a hearing. At that time, DCF could subpoena the therapist to testify regarding the visitation issue.
On November 13, 2001, A.L.’s motion for unsupervised visitation was heard by the trial court. At the hearing, the children’s therapist testified that she could offer no opinion on the appropriateness of A.L.’s visits with the children because she had not spoken with A.L. and said she would need to talk with A.L. before she could offer an opinion. She further observed that she could not have such an interview without the permission of the children’s guardian, the grandmother. The trial court concluded that the grandmother was not likely to give such permission. The therapist did testify that she had been advised that the boys had been doing better the past month and noted that this improvement coincided with their lack of contact with A.L.
On December 5, 2000, the Ohio authorities sent their home study investigation report on A.L. to both DCF and the trial court. Although the Ohio officials reported that the living arrangements were adequate, the report concluded: “Before a recommendation can be given for placement it is important to consider the children’s feelings and wishes. It may be advisable to arrange visits between [A.L., her boyfriend,] and the boys before any final placement decision is made since the attachment between [A.L.] and the children is unknown.”
On January 25, 2001, without entering any findings of fact, the trial court issued an order denying A.L.’s motion for visitation with her sons. Subsequently, on March 22, 2001, the trial court issued an order terminating protective supervision, ordering the children’s long-term placement with the grandmother, and denying A.L. visitation with the children. It is this order that is before us on appeal.
We will not reverse an order that determines permanency by directing long-term placement with a relative if there is competent, substantial evidence to support it. L.L.C. v. Dep’t of Children & Families, 790 So.2d 1239 (Fla. 5th DCA 2001). While we conclude that there is competent, substantial evidence to support the trial court’s findings that A.L. failed to substantially comply with the case plan for a period of one year and that long-term rela *1097 tive placement was an appropriate permanency placement, the record does not support that portion of the placement order that denied A.L. all future contact with her children.[2]
Although both section 39.622(4), Florida Statutes (1999), and the trial court’s order itself clearly provide that such a permanency placement does not preclude A.L. from subsequently seeking reunification with her children, the combined effect of the trial court’s order denying A.L. all contact with the children, along with the refusal of the Ohio authorities to provide a favorable home study report recommendation until some visitation occurs, essentially converts this order into a termination of parental rights order. Because the testimony before the trial court does not support such a severe result, this prohibition of all future contact amounted to an abuse of the trial court’s discretion. A less drastic remedy should have been found. 790 So.2d at 1239. Accordingly, we reverse that portion of the court’s order denying A.L. visitation with her children and remand this case to the trial court for further proceedings consistent with this opinion. Reversed and remanded.
BLUE, C.J., and GREEN, J., concur.

. Although DCF initially reported "non-compliance” with the requirement that A.L. sign releases to allow DCF to obtain certain mental health documents, DCF later corrected that statement to show that A.L. had in fact signed the releases as required.

. The trial court’s order on permanency entered October 13, 2000, stated: "The natural mother shall have no contact with the children until further order of the Court.” By denying A.L.’s motion for visitation, ordering the children into long-term relative placement, and terminating protective supervision, the trial court effectively denied A.L. all contact with her sons.