822 So.2d 571 (2002)
C.F., Mother of D.F. and A.F., Children, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D02-412.
District Court of Appeal of Florida, Fifth District.
August 2, 2002.
Ryan Thomas Truskoski, of Ryan Thomas Truskoski, P.A., Orlando, for Appellant.
Charles D. Peters, Department of Children and Families, Orlando, for Appellee.
PLEUS, J.
The mother appeals an order awarding long term custody of her children to a non-relative. This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.146. She argues that the trial court erred in ordering long term placement because it failed to follow the procedural requirements of section 39.622, Florida Statutes. We agree and reverse.
*572 The children were sheltered on January 4, 2001, due to the mother's alleged abandonment of them. The Department of Children and Families ("DCF") filed a dependency petition, which the mother denied at arraignment on May 4, 2001. On July 18, 2001, DCF filed a case plan signed by the mother. The case plan goal was reunification. The plan required the mother to complete a parenting program, maintain adequate income and housing, maintain monthly contact with her counselor, complete a substance abuse evaluation, and attend family counseling. The case plan contained an additional requirement that the mother obtain a psychological evaluation, but this requirement was stricken through with a ball point pen, dated and initialed, apparently by the DCF attorney.[1]
The lower court accepted the case plan on July 18, 2001. The court adjudicated the children dependent on August 6, 2001. On September 14, 2001, the mother's attorney filed notice that the mother had obtained a drug and alcohol evaluation reflecting that "no substance abuse treatment is recommended at this time."
On November 8, 2001 and January 29, 2002, DCF filed "Judicial Review Social Study/Case Plan Updates," both of which purported to change the case plan goal to long-term custody. The updates indicated that the mother was "non-compliant" in completing a parenting class, drug evaluation, family counseling and psychological evaluation. They reported that she was "in-progress" toward completing other goals of providing for the children, maintaining stable employment and housing and visiting with her children.
The lower court held a judicial review hearing on January 29, 2002. It ordered the children to be placed in long-term custody with their caretaker, Geraldine Cross.[2]
The mother appeals this order and argues that it was improper because the case plan goal was reunification. Although section 39.622, Florida Statutes (2001), allows the circuit court to order long-term custody at a judicial review hearing, as the lower court did in this case, the court must find that all of the statutory conditions are met and enter an order reflecting its findings. See § 39.622 Fla. Stat. (2001); Fla. R. Juv. P. 8.415(f)(7). These conditions include the submission of a case plan that does "not include reunification with the parents or adoption by the relative or other adult." §§ 39.622(1) and (2), Fla. Stat. (2001). The case plan signed by the mother and approved by the court on July 18, 2001 had a goal of reunification.[3] Accordingly, *573 the lower court should not have ordered long-term custody because the case plan goal was reunification. See In the Interest of M.C., 796 So.2d 566 (Fla. 2d DCA 2001) (order granting long-term custody erroneous, in part because goal of case plan was reunification).
Further, our review of the judicial review hearing reveals that the trial court failed to adequately determine "the compliance or lack of compliance of all parties with applicable items of the case plan," as required by section 39.701(7)(d), Florida Statutes. See also, In Interest of L.W., 615 So.2d 834, 838 (Fla. 4th DCA 1993) (purpose of judicial review is to assure that the Department is complying with reasonable efforts to assure the protection of the child). The lower court heard testimony on only three of the case plan requirements. On the drug and alcohol evaluation, proof of which had been filed in the court file, the following exchange occurred:
[DCF Caseworker]: Okay. You said you did the drug and alcohol evaluation?
[Mother]: Yeah, I did do that.
[DCF Caseworker]: Okay. Because we haven't received any documentation of any sort of case plan compliance with...
[Mother]: Yeah. I was under the impression, when I talked to him, that he was going to send you the ...
The Court: Okay. That's enough. That's enough. That's enough. Is she not staying in touch ...
[Mother]: But I have it. I do have it.
The Court: Shush.
The caseworker then stated that mother had "maintained contact with the children and things of that sort." On the issue of obtaining a psychological evaluation, which does not appear to have been a case plan requirement, the following exchange occurred:
The Court: See, the problem with closing it out now isand believe me, I just so would love to close cases. But if have you ever given her a referral for a psychological evaluation?
[DCF Caseworker]: Yeah. Actually, we've got funding forfor that also.
The Court: But listen to my question. Have you given her a referral.
[DCF Caseworker]: Yes, with Dr. Tressler.
The Court: Okay. And how did you give that to her?
[DCF Caseworker]: We were in contact with her before the previous hearing for that, and we've had funding approved and everything.
The Court: And Mother has not attended the psychological evaluation. This case is closed to long-term relative placement. The Court accepts the recommendations of the Department.
From this exchange, it appears the lower court concluded that the mother failed to substantially comply with her case plan based on failing to complete tasks that had in fact been completed and tasks that were not required under the case plan.
Because the case plan goal was for reunification, we reverse the order for long term custody. In addition, we direct the *574 lower court to conduct a judicial review in compliance with Florida Rule of Juvenile Procedure 8.415(f) and section 39.701, Florida Statutes (2000). The trial court shall ensure that the mother is afforded full due process. The judicial review should be geared toward a reunification, unless the trial court finds at that hearing that reunification will be detrimental to the children's well-being, safety, or that their physical, mental, or emotional health would be endangered by a return to the mother's home. See In the Interest of M.C., 796 So.2d at 568, citing S.J. v. Dep't of H.R.S., 700 So.2d 71, 76 (Fla. 1st DCA 1997); Fla. R. Juv. P. 8.415(f)(2).
REVERSED AND REMANDED.
SHARP, W., and HARRIS, JJ., concur.
NOTES
[1] The initials appear to be "VT" or "VJ" with a line over them. The DCF attorney's name was Vanessa T. Gayden. None of the other co-signers had a first initial of "V".
[2] Cross is a non-relative with whom the mother originally left the children. She continued to care for them during these proceedings.
[3] DCF's "Judicial Review Social Study/Case Plan Updates," which purported to change the case plan goal from reunification to long-term custody, did not comply with section 39.601(9)(f) which provides, in pertinent part:

The case plan may be amended at any time if all parties are in agreement regarding the revisions to the plan and the plan is submitted to the court with a memorandum of explanation, if the court approves such amendment. The case plan may also be amended by the court or upon motion of any party at a hearing, based on competent evidence demonstrating the need for the amendment.
There is no evidence that the "Case Plan Update" was agreed to by the mother. To the contrary, it stated that the mother desired reunification. In addition, there is no evidence in the record that the lower court ever amended the case plan. Therefore, these updates are not valid case plan amendments.
We also note that the Case Plan Updates contain numerous inaccuracies. Specifically, they report the mother's noncompliance in obtaining a drug and alcohol evaluation. However, on September 14, 2001, the mother's attorney filed documentation of the mother's drug and alcohol evaluation, which found that "[n]o substance abuse treatment is recommended at this time." They also report the mother's non-compliance in obtaining a psychological evaluation. However, the case plan signed by the mother and accepted by the court on July 17, 2001 reflects that this requirement was stricken by marking through it with ball point pen. This marking was initialed and dated. The initials appear to be those of DCF's attorney. Thus, it does not appear that the mother was required to obtain a psychological evaluation.