829 So.2d 359 (2002)
B.D.E., mother of F.E., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES and T.M., Appellees.
No. 1D02-0563.
District Court of Appeal of Florida, First District.
November 1, 2002.
Joseph A. Alldredge, Esquire, Panama City, for Appellant.
Catherine A. Healey, Senior Attorney, Panama City, for Appellee, Department of Children and Family Services.
Richard D. Ogburn, Esquire, Panama City, for Appellee, T.M.
*360 BENTON, J.
B.D.E. appeals an order leaving her dependent son, F.E., in the custody of T.M., who is F.E.'s paternal grandmother. After B.D.E. filed a motion for return of her son's custody, T.M. filed a petition for termination of B.D.E.'s parental rights. See § 39.806(1), Fla. Stat. (2000) (allowing any person with knowledge of facts supporting termination to file a petition to terminate parental rights). The trial court denied both T.M.'s petition for termination of parental rights and B.D.E.'s motion for return of custody.[1]
B.D.E. contends that she is entitled to custody of F.E. because she complied with a court-approved case plan, which had as its objective reuniting mother and son. Compliance with such a case plan requires that the child be returned to his parent(s) "if the court is satisfied that reunification will not be detrimental to the child's safety, well-being, and physical, mental, and emotional health." § 39.701(8)(b), Fla. Stat. (2001); see Fla. R. Juv. P. 8.415(f)(2). Inasmuch as the trial court was not so satisfied for reasons it adequately set forth in findings supported by the evidence, we affirm.

I.
F.E. was born on February 4, 1994. Because he had cocaine in his system, the Department of Health and Rehabilitative Services (predecessor of the Department of Children and Family Services, see § 20.19, Fla. Stat. (1993 & 2001)) took F.E. into custody while he was still in hospital; and filed an emergency shelter petition, which was granted on February 8, 1994. The Department of Health and Rehabilitative Services (HRS) then placed F.E. in the "temporary" custody of T.M. under protective supervision.[2] F.E. has remained in T.M.'s custody since.
Alleging that B.D.E. had failed to comply with the terms of a case plan approved by the trial court on January 11, 1995, HRS filed a motion to terminate protective supervision. The trial court granted this motion, which alleged that F.E. had "stabilized" in his placement with T.M. and no longer needed protective supervision, on June 23, 1995. The order leaving F.E. in the custody of T.M. without continuing protective supervision by HRS effected a permanent placement for F.E.,[3] the trial court's retention of jurisdiction notwithstanding. See § 39.41(2)(a)3., Fla. Stat. (1995) ("The termination of supervision may be with or without retaining jurisdiction, at the court's discretion, and shall in either case be considered a permanency option for the child.").
B.D.E.'s parental rights to another child, born in 1995 also with cocaine in his system, were involuntarily terminated in 1997. While pregnant with a third child, B.D.E. began drug treatment in July of 1998 and, according to undisputed evidence, successfully completed drug treatment by the middle of 1999. As far as the record reveals, B.D.E. has not used cocaine or other illegal substances since completing this treatment.

II.
On November 23, 1999, B.D.E. filed a pro se motion seeking to regain custody of *361 F.E., asserting that she had substantially complied with the terms of the case plan approved by the trial court on January 11, 1995. Without ruling on the motion, the trial court ordered dependency mediation. See § 39.521(1)(b)2., Fla. Stat. (2000) (authorizing the court to require "the parties to participate in dependency mediation"). T.M. took part in this mediation, and was a signatory to the agreement reached at the conclusion of the mediation.
The mediation agreement, approved by the trial court on May 24, 2000, stipulated that B.D.E. had substantially complied with the terms of the case plan approved by the trial court on January 11, 1995, and provided for reinstatement of protective supervision. In keeping with the mediation agreement, the Department of Children and Family Services (DCFS) prepared a new case plan with a goal of reunification, which the trial court approved without modification on July 13, 2000.[4] In substance, the new case plan required B.D.E. to maintain a stable residence for at least six months, to remain free of illegal substances, to submit to urinalysis whenever requested by DCFS, to attend Narcotics/Alcoholics Anonymous meetings weekly, to undergo a psychological evaluation and complete any psychological treatment recommended, to attend family counseling monthly, to visit F.E. regularly,[5] and to ensure that F.E. remained involved in a developmental disabilities program.

III.
Mediation agreement and approved case plan notwithstanding, T.M. filed a petition for termination of B.D.E.'s parental rights on October 11, 2000. The trial court consolidated B.D.E.'s motion for return of custody and T.M.'s petition for termination of parental rights for hearing, and took evidence on July 30 and August 9, 2001. Throughout the course of the proceedings below, DCFS recommended reunification[6] based on the mother's compliance with the case plan approved by the trial court on July 13, 2000. Eventually, the trial court entered the order under review, denying the grandmother's petition for termination of parental rights, denying the mother's motion for return of custody, and continuing F.E.'s placement in the long-term custody of his paternal grandmother, this time pursuant to section 39.622, Florida Statutes (2001).
Despite earlier approval of the mediation agreement stipulating to the contrary, the trial court found that B.D.E. did not substantially comply with the terms of the case plan approved by the trial court on January 11, 1995.[7] The trial court also found the following:

*362 10. [F.E.] has significant physical, emotional, and mental problems. He has been diagnosed with Microcephaly; Attention Deficit Hyperactivity Disorder due to an Organic Medical Condition; Mild to Moderate Mental Retardation (52 I.Q.): Fetal Alcohol Syndrome; and Severe Stressors....
. . . .
21.... The minor child has lived for more than seven years with the Paternal Grandmother [T.M.].... [L]ong term relative placement with the Paternal Grandmother [T.M.] is the most desirable means of protecting the minor child, continuing stability, and preserving the Natural Mother's [B.D.E.'s] parental rights.
. . . .
23. Next, the Court must consider the Natural Mother's [B.D.E.'s] capacity to care for the child so that the child's safety, well-being, physical, mental and emotional health will not be endangered. The Court finds that this child suffers from a number of disabilities. These disabilities have been managed, on a day to day basis, by the Paternal Grandmother.... The Court finds that the Natural Mother does not have the capacity, at this point to care for the child's special physical, mental and emotional needs.
24. The Court must consider the child's present and future mental and physical health needs. The child's disabilities that currently exist, and will continue to exist, are being best met by the Paternal Grandmother's [T.M.'s] care. At this point, the Natural Mother [B.D.E.] has not displayed the capacity to address the child's present and future mental and physical health needs.
. . . .
28. The Court must consider the time the child has spent in a stable and satisfactory environment and the desirability of maintaining continuity.... This child, with all of his disabilities, has been cared for on a day to day basis by [T. M.], with little or no help from the Department of Children and Families and the Natural Mother. Removing the child from the safe, stable, loving environment would be devastating to the minor child.
Record evidence supports the foregoing, numbered findings, which together make clear that the trial court was not "satisfied that reunification will not be detrimental to the child's safety, well-being, and physical, mental, and emotional health." § 39.701(8)(b), Fla. Stat. (2001).

IV.
The trial court concluded erroneously that B.D.E. had not substantially complied with her case plan. The guardian ad litem and each of DCFS's witnesses testified that B.D.E. was in compliance with the case plan approved by the court on July 13, 2000. She visited her son regularly; her urinalyses remained "clean"; she continued to attend support meetings; and she completed all of the required evaluations. There was no evidence to the contrary. The conclusion that she had not complied with her case plan within the contemplation of section 39.701(8)(b), Florida Statutes (2001), was error, because it was based solely on case plans that had been in place before the superseding case plan approved by the trial court on July 13, 2000, and conduct that occurred before that date.
Despite the trial court's ruling on this point, however, the trial court's alternative rationale is sound, and "the record w[as] sufficiently developed to allow affirmance on this alternate ground." Robertson v. State, 829 So.2d 901, 909 (Fla.2002). See generally Dade County Sch. Bd. v. *363 Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."); Applegate v. Barnett Bank, 377 So.2d 1150, 1152 (Fla.1979) ("Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it."); F.M. v. Dep't of Children & Families, 807 So.2d 200, 201 (Fla. 4th DCA 2002).
The order under review finds essentially that returning F.E. to the custody of B.D.E. would be detrimental to his physical, mental and emotional health or well-being,[8] finding specifically: F.E. has significant disabilities with which T.M. has successfully coped while she has had custody of F.E. over the last seven years. On the other hand, B.D.E. has had little training on how to deal with F.E.'s disabilities. Nor has B.D.E. availed herself of opportunities for the training she needs. As a result, she is presently less capable of dealing with her son's disabilities than T.M. is. Finally, F.E. has a strong bond with T.M. The trial court found that removing him from T.M.'s custody would be "devastating" to his emotional well-being. In her brief, T.M. has argued that "the lower court obviously felt that returning this seven year old child, with a host of physical and emotional problems, would clearly be detrimental to the minor child."
The trial court wason objectively reasonable groundsless than "satisfied that reunification will not be detrimental to the child's safety, well-being, and physical, mental, and emotional health." § 39.701(8)(b), Fla. Stat. (2001). See Fla. R. Juv. P. 8.415(f)(2); C.F. v. Dep't of Children & Families, 822 So.2d 571, 574 (Fla. 5th DCA 2002); In re M.C., 796 So.2d 566, 568 (Fla. 2d DCA 2001); L.L.C. v. Dep't of Children & Families, 790 So.2d 1239, 1241 (Fla. 5th DCA 2001). In these circumstances, affirmance is required.
Affirmed.
DAVIS and POLSTON, JJ., concur.
NOTES
[1] T.M. has not cross-appealed the denial of her petition for termination of B.D.E.'s parental rights.
[2] The trial court adjudicated F.E. dependent and approved F.E.'s placement with T.M. under protective supervision on April 19, 1994.
[3] As F.E.'s permanent custodian, T.M. is a proper party to the appeal of the order even insofar as it denies B.D.E.'s motion for return of custody. See Florida Rules of Appellate Procedure 9.020(g) and 9.146(b), and Florida Rule of Juvenile Procedure 8.210(b).
[4] In approving the new case plan, the trial court did not require the parties to make any modifications in order to incorporate terms of earlier case plans. See § 39.603(2), Fla. Stat. (2000).
[5] On March 21, 2000, the trial court entered an order granting B.D.E. visitation rights and setting a visitation schedule.
[6] DCFS has maintained the same position on appeal, even though it failed to file a notice of joinder as contemplated by Florida Rule of Appellate Procedure 9.360(a). DCFS is thus an appellee as defined by Florida Rule of Appellate Procedure 9.020(g)(2), but only nominally. T.M. filed her answer brief some five weeks after DCFS filed its answer brief, and did not move to strike DCFS's brief. Cf. Premier Industries v. Mead, 595 So.2d 122 (Fla. 1st DCA 1992).
[7] The trial court also found noncompliance with still earlier case plans. We need not address the accuracy of these findings, in light of the superseding case plan approved by the trial court on July 13, 2000, and T.M.'s failure to cross-appeal denial of the termination petition.
[8] Under a prior version of the statutes, the standard was endangering the safety and well-being of the child. See S.J. v. Dep't of Health & Rehabilitative Servs., 700 So.2d 71, 75 (Fla. 1st DCA 1997) (noting that, under prior law, "[i]f a parent requests custody of a child, `the court shall place the child with the parent unless it finds that such placement would endanger the safety and well-being of the child.' § 39.41(1), Fla.Stat. (Emphasis supplied)."); Roberts v. Fla. Dep't of Children & Families, 687 So.2d 51, 51-52 (Fla. 3d DCA 1997).