THOMPSON, J.
S.E., the mother of K.E. (“child”), appeals an order placing long term custody of the -child with the father. We affirm.
The child had been adjudicated dependent as to the mother, and the case-plan had a primary goal of reunification with the mother. The mother had completed all the tasks of her case plan, except she failed to continue psychotherapy. The. mother argues that the trial court did not make any determinations that she had failed to substantially comply with the terms of her case plan or that it was in the. child’s best interest to be permanently placed with the father.
Compliance with a case plan with a goal of reunification requires that the child be returned to his parent(s) if the court is satisfied that reunification will not be detrimental to the child’s safety, well-being, and physical, mental, and emotional health. In re. H.H., 865 So.2d 634, 635 (Fla. 2d DCA 2004); C.F. v. Dep’t of Children & Families, 822 So.2d 571 (Fla. 5th DCA 2002). Moreover, an appellate court will, not reverse an. order that determines permanency by directing long-term placement with a relative if there is competent, substantial evidence to support it. H.H., 865 So.2d at 635.
In this case, the guardian ád litem testified that she was concerned about the child’s return to the mother because there were conflicting statements about how the child suffered a leg injury.[1] The case *282 worker testified that normally, it was the department’s policy to close a case after a year, but this situation was an “extraordinary circumstance.” The department recommended that the mother successfully complete individual psychotherapy, and supply it with a positive recommendation from the psychotherapist. Additionally, the case worker testified that the department was not satisfied that the child could be safely returned to the mother on a full-time basis. In ordering long-term placement with the father, the trial court noted testimony that the child could not be safely returned to the mother and that maybe the mother needed visitation. It found that the father could provide a more stable, safe environment for the child. Moreover, the child suffered injuries while in the mother’s care, and it was never resolved who inflicted the injuries upon the child. The trial court stated:
And I will tell you — I will say to the Mother, so that she’s clearly aware, I think the parties need to, sometimes you need to know the mind of the Court because that sometimes [ajffects what happens with these cases and the opinion of the court is based on what the Court receives and also the observations and the knowledge of this case, which has been on-going. And the Court recalls perhaps more than in some cases what’s gone on in this case, factually. And that is the Court’s concerned with the age of the child at this time — Mother, I hope you’re listening — and the ability of this child to express what goes on, what has gone on. And that’s a concern because of the nature of the allegations and I will say that as being one of the considerations and concerns of the Court at this time.
The order placing long-term custody of the child with the child’s father is supported by competent, substantial evidence. See In re J.C., 805 So.2d 1094, 1096 (Fla. 2d DCA 2002).
AFFIRMED.
SAWAYA, C.J., and PETERSON, J„ concur.

. The child was sheltered due to serious injuries. According to the shelter order, the child was taken to the hospital with swelling on her left thigh. The mother and maternal grandmother were the only caretakers of the child within the 24 hours prior to the child’s hospi *282 tal admission. The child had a displaced spiral fracture of the femur, and the doctor opined that such a bone could not have been broken without a large snapping sound and the child screaming. The femur was twisted and broken with such force that the child could not have inflicted the injuries upon herself. The child had been taken to the hospital on at least three other occasions during that month with unexplained injuries including bruising on her back, forehand, ankles, foot, and hand. There were conflicting statements about the mother’s boyfriend, at one time, the mother stated the boyfriend was in the room and another time, the mother stated he was not in the room when the injury occurred.