904 So.2d 615 (2005)
S.P., the mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D04-4619.
District Court of Appeal of Florida, Fourth District.
June 22, 2005.
*616 Felicia Shaman of Law Office of Felicia Shaman, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeffrey P. Bassett, Assistant Attorney General, Fort Lauderdale, for appellee.
SHAHOOD, J.
S.P. was sixteen years old and in foster care when she became pregnant. The baby was born on February 19, 2002. The following day, The Department of Children and Families (DCF) filed an Affidavit and Petition for Placement in Shelter, alleging that S.P. was in foster care, had no income, and had run away from her foster home twice during her pregnancy. The court granted the petition, removed the baby from S.P., and placed him in shelter with the paternal grandmother.
Shortly thereafter, DCF filed a petition for dependency based on the same allegations. Following a disposition hearing, the baby was adjudicated dependent and a case plan was accepted. The goal was reunification with S.P. by January 31, 2003. Pursuant to the plan, S.P. was required to complete a parenting class, comply with a Developmental Services Support Plan, continue her education goals and maintain a stable environment. The plan was later amended to require individual counseling.
S.P. did not fully comply with the case plan by the goal date, but the court found that she was working toward completing the tasks. Thereafter, several permanency hearings took place to review the status and, each time, the court granted case plan extensions. Following a hearing in November 2003, a general master found that S.P. had not substantially complied with the case plan, "but has completed all tasks." The general master further noted, "the court is concerned about the mother's stability" and recommended extending the case plan goal "due to the mother's stability as evidenced by behavior in the foster home."
Thereafter, several additional permanency hearings and evaluations took place. Each time it was noted that S.P. was not in substantial compliance with her case plan, either because she had not shown stability or had not completed her individual counseling. Extensions were granted through April 2004, with visitations going from supervised to unsupervised and back based on S.P.'s behavior. In June 2004, the court again found S.P. not to be in substantial compliance, approved a case plan goal of long-term care with a relative, and changed S.P.'s visits back to supervised.
In November 2004, S.P. filed a Motion for Reunification. In the petition, she stated that she had graduated from high school, completed her parenting class, obtained *617 an apartment, was receiving social security income, and was participating in individual counseling. She also had a life coach from Developmental Services who was assisting and supporting her. In response, DCF filed a motion to terminate protective supervision. The only allegation in support of the motion was that permanency had been achieved for the child under the supervision of his paternal grandmother.
Evidence at the hearing showed that the baby was a healthy, two-year-old. S.P. regularly visited the child and he was always happy to see her. S.P. had successfully completed her parenting classes and was "working towards completing her individual counseling." S.P. had obtained a two-bedroom apartment, was receiving income from the state, and would soon be receiving Independent Living Scholarship money when she started school. Her life coach testified that S.P. was making a lot of progress, was regularly seeing her psychiatrist and taking her medications, was working with Vocation Rehabilitation Services to obtain a job, and was in school working for her child care certificate. DCF acknowledged S.P.'s progress, but pointed out a letter from her therapist who recommended additional individual therapy "to permit [S.P.] to gain a little more maturity."
The trial court found as follows:
I don't believe that the child can safely reside with Mom on a full-time basis at this time. Maybe in the future, but certainly not now. Not based on a full review of this case and the information that I've seen.
The court denied the motion for reunification and granted DCF's motion to terminate protective supervision.
Section 39.701(8)(b), Florida Statutes (2002) states:
The court shall return the child to the custody of the parents at any time it determines that they have substantially complied with the case plan, if the court is satisfied that reunification will not be detrimental to the child's safety, well-being, and physical, mental, and emotional health.
An order determining permanency based on this statute must be supported by competent substantial evidence. See T.F. v. Dep't of Children & Family Servs., 881 So.2d 702, 703 (Fla. 1st DCA 2004).
In this case, the evidence showed that S.P. had completed all of her tasks and was attending counseling as required. In fact, her attorney told the court that S.P. did not know what else she could do to comply with the plan because she had done everything required of her. Despite S.P.'s apparent substantial compliance with her case plan, the trial court denied her petition for reunification. The trial court did not make findings to support the conclusion that the child could not safely reside with S.P.
In In re H.H., 865 So.2d 634, 635 (Fla. 2d DCA 2004)(citing B.D.E. v. Dep't of Children & Family Servs., 829 So.2d 359 (Fla. 1st DCA 2002)), the court held:
[E]ven where the trial court's finding regarding compliance is not supported by competent, substantial evidence, long-term placement can be affirmed if the trial court's order, on objectively reasonable grounds, makes a finding that reunification would be detrimental to the child's safety, well-being, and physical, mental, and emotional health.
The only evidence in the record in this case which weighed against reunification was S.P.'s therapist's concern that placement of the child with S.P. might be overwhelming for her. The trial court did not cite this evidence in support of its decision, but stated only that it was based on a "full review of this case" and information the court had seen. The court explained that "this has been a case where I've extended *618 and extended and extended with the anticipation that we'd be a lot further along in our progress at this point. I'm not going to extend it anymore."
There was no objective evidence to support a finding that living with S.P. would be unsafe for the child. Although the court referenced some notes, they are not in the record. Accordingly, we reverse the order denying S.P.'s motion for reunification, terminating long-term supervision, and permanently placing the child with the paternal grandmother. We remand for the trial court to make findings to support the conclusion that S.P. cannot provide a safe environment for the child.
REVERSED AND REMANDED with directions.
STEVENSON and GROSS, JJ., concur.