460 So.2d 495 (1984)
In the Interest of C.T.G., a Child.
No. AU-42.
District Court of Appeal of Florida, First District.
December 11, 1984.
Christina A. Zawisza and Mary K. Williams of Jacksonville Area Legal Aid, Inc., Jacksonville, for appellant.
Jim Smith, Atty. Gen., and Walter M. Meginniss, Asst. Atty. Gen., Tallahassee, for Department of Health and Rehabilitative Services, appellee.
ERVIN, Chief Judge.
This is an appeal from the trial court's order failing to require Health and Rehabilitative *496 Services (HRS) to enter into a performance agreement with the natural mother prior to ordering the child permanently committed. We reverse.
The child was born on July 17, 1977, while his mother was hospitalized in the state hospital, and on August 15, 1977, the child was adjudicated to be a dependent child and remained in foster care until May of 1980. On May 29, 1980, the court entered an order denying a petition for permanent commitment and permitted the mother custody of the child, on the ground that the mother had made significant progress in stabilizing her living situation. However on October 10, 1980, upon a finding that the child was deprived and neglected without parental care, the child was adjudicated dependent and committed to the temporary care and custody of HRS. On April 6, 1981, a permanent plan was filed and an order entered on September 21, 1981, transferring the child to his great aunt and great uncle. This arrangement was unsuccessful, and on March 30, 1982, the child was again placed with HRS for foster home placement with a request for a current home study on the mother. The study revealed that the mother had a history of psychotic problems and mental instability, had been admitted to mental hospitals on several occasions, was then living with her boyfriend, and was pregnant and due in October of 1982. The report also revealed that the mother was currently unemployed due to her pregnancy. On September 30, 1982, despite the failure of HRS to participate in the execution of a performance agreement, HRS filed a petition for permanent commitment of the child for the purpose of subsequent adoption, on the ground that the mother suffered from a long history of emotional instability and had been unable to stablize her life for the purpose of providing care for the child. The mother moved to stay permanent commitment proceedings pending compliance of HRS with the requirements of Section 409.168(3)(a), Florida Statutes, regarding the preparation of performance agreements.
On May 16, 1983, the trial court entered an order denying the mother's motion to stay the proceedings and for a review of the permanent plan. The trial court determined that the mother had actual knowledge of HRS's plan to place the child with relatives, or pursue permanent commitment plans since October 19, 1980, and had thus waived her right to review the permanent plan or to stay permanent proceedings. The trial court, however, also stated that the reason that a performance agreement was not required was strictly limited to the facts of the case, noting that the language of section 409.168 is mandatory and must be complied with unless a parent will not or cannot enter into a performance agreement.
The issue before this court is whether Section 409.168(3)(a), Florida Statutes,[1] requires *497 that a performance agreement be prepared before permanent commitment proceedings are instituted. In 1980 the Florida Legislature amended section 409.168 "to provide a new tool in aid of limiting recourse to foster care and to `protect and promote every child's right to the security and stability of a permanent family home.'" In the Interest of A.B., 444 So.2d 981, 990 (Fla. 1st DCA 1983). The legislative intent in creating the performance agreement procedure is clearly set out in section 409.168(1), as follows:
The Legislature finds that 7 out of 10 children placed in foster care do not return to their biological families after the first year and that permanent homes could be found for many of these children if their status were reviewed periodically and they were found eligible for adoption. It is the intent of the Legislature that permanent placements with their biological or adoptive families be achieved as soon as possible for every child in foster care and that no child remain in foster care longer than 1 year. It is the intent of the Legislature, therefore, to help ensure a permanent home for children in foster care by requiring a performance agreement and a periodic review and report to the court on their status.

(e.s.) The purpose of the performance agreement is to
record the actions to be taken by the parties involved in order to quickly assure the safe return of the child to his parents or, if such return is untenable, the permanent commitment of the child to the department or licensed child-placing agency for the purpose of finding a permanent adoptive home.
Section 409.168(3)(a)1. It is apparent that these newly enacted provisions "require an affirmative effort to identify to the natural parent the problems or conditions in the home that account for the child having been removed and kept in foster care; to assist the parent in making a personal commitment, [and] to remedy those specific conditions". In the Interest of A.B., 444 So.2d at 991 (e.s.).
Section 409.168(3)(a), effective October 1, 1980, mandates the preparation of a performance agreement when the child has been placed in foster care by the appropriate social service agency. The only exception to the preparation of a performance agreement between HRS and the parent(s) is provided for when "the natural parents will not or cannot participate in preparation of a performance agreement." (e.s.) Section 409.168(3)(a)3. In this case, the child was placed in a foster home on October 10, 1980 and a permanent plan was filed on October 31, 1980. It is undisputed that at no time was a performance agreement prepared or executed, or that the mother would not or could not participate in the preparation of a performance agreement. Conceding that the language of section 409.168, regarding a performance agreement is mandatory, the trial court concluded that under the circumstances, a performance agreement was not required. This conclusion was clearly at variance with the legislative intent.
Based on the aforementioned underlying purposes and intent of section 409.168, the preparation of a performance agreement between the parent and HRS is "central to the strategy for securing each child a permanent home with his legally recognized parent", In the Interest of A.B., at 991, and should be mandated in every case when a child is placed in foster care. The statute requires that the mother's rights as a natural parent should be safeguarded to the extent of giving her the opportunity of participating in the performance agreement process as set forth in Section 409.168.
Reversed and remanded for further consistent proceedings.
ZEHMER, J., specially concurring with written opinion.
*498 BOOTH, J., dissents.
ZEHMER, Judge, concurring specially.
I concur, although somewhat reluctantly, in the decision to reverse. The rather extraordinary facts we are dealing with strongly suggest that, regardless of what we hold, this case will ultimately result in the permanent commitment of this unfortunate child. For this reason, the temptation is great to let the appealed judgment stand, but I am convinced that the majority opinion is a correct interpretation of the law and that to hold otherwise would create bad precedent leading to substantial erosion of the laudatory purposes underlying the 1980 legislation requiring performance agreements.
NOTES
[1] § 409.168(3)(a)1, 2, and 3 is as follows:

(3)(a) In each case in which the custody of a child has been vested either voluntarily or involuntarily in the social service agency and the child has been placed in foster care, a performance agreement shall be prepared within 30 days after the placement and shall be submitted to the court.
1. The purpose of a performance agreement shall be to record the actions to be taken by the parties involved in order to quickly assure the safe return of the child to his parents or, if such return is untenable, the permanent commitment of the child to the department or licensed child-placing agency for the purpose of finding a permanent adoptive home.
2. If the preparation of a performance agreement, in conference with the natural parents, cannot be accomplished within 30 days, for good cause shown, the court may grant an extension not to exceed 30 days.
3. In the event the natural parents will not or cannot participate in preparation of a performance agreement, the social service agency shall submit a full explanation of the circumstances, and a plan for the permanent placement of the child, to the court within the time as provided for a performance agreement. The plan shall include, but need not be limited to, the specific services to be provided by the social service agency, the goals and plans for the child, and the time frame for accomplishing the provisions of the plan and for accomplishing permanence for the child. The plan shall take the place of the performance agreement and shall meet all requirements provided for the performance agreement. The parent who has not participated in the development of a performance agreement may seek review of the plan developed by the social service agency prior to the initial 6 months' judicial review.