466 So.2d 387 (1985)
In the Interest of T.W.S., a Child, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. AY-167.
District Court of Appeal of Florida, First District.
March 26, 1985.
Rehearing Denied April 26, 1985.
*388 Neal L. Betancourt, Jacksonville, for appellant.
Jim Smith, Atty. Gen., and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for appellee.
WIGGINTON, Judge.
This is an appeal from the trial court's order terminating foster care and supervision by the Department of Health and Rehabilitative Services, and placing T.W.S. in the custody of his paternal grandparents. At the outset of these protracted proceedings, which stretched over the course of two years, T.W.S. was adjudicated dependent shortly after his birth, removed from his mother's custody, and placed in foster care in the home of his paternal grandparents residing in New York. His mother and father were estranged, the mother living in Jacksonville, the father on a naval base in Philadelphia.
Prior to the entry of the order herein appealed, five hearings were held culminating in orders reaffirming dependency status and continuing foster care. Although the mother was at all times admonished by the court to receive counseling for her alcoholism and to stablize her life, there is no record evidence that she, or the father, entered into a performance agreement with H.R.S., as required by section 409.168(3)(a), Florida Statutes, or, for that matter, that she received any assistance toward rehabilitation from that agency. Further, despite efforts by the trial court to have the necessary paper work completed for implementation of the Interstate Compact on the Placement of Children, as mandated by section 409.401, Florida Statutes, the record does not indicate whether the Compact was ever complied with, although in August, 1983, the court was informed that three to six weeks was still needed for completion of the paper work.
To say that we are dismayed at the woeful inattention to statutory mandates evidenced by the participants' actions in this cause is an understatement. Although we can appreciate the trial court's apparent concern over the welfare of the child, and its frustration with H.R.S.'s negligent handling of Compact paper work and total abandonment of its statutory responsibilities to the parents, we cannot overemphasize the absolute necessity to recognize that in matters of child dependency and foster care the legislature has spoken and its statutory mandates must be taken seriously. As we have earlier stated:
In the overriding interest of promoting "every child's right to the security and stability of a permanent family home," section 409.168 now presses HRS and the court to make a decisive choice: either the child must be returned to the natural parents, after they have satisfactorily remedied stated conditions that cause the child's dependency; or, failing that, proceedings are to be had terminating parental rights and placing the child permanently with HRS for adoption or other placement.
In the Interest of A.B., 444 So.2d 981, 991 (Fla. 1st DCA 1983). In that regard, a performance agreement between the parents or parent and H.R.S. is "central to the strategy for securing each child a permanent home with his legally recognized parent." Id.; see also, In the Interest of C.T.G., 460 So.2d 495 (Fla. 1st DCA 1984). The legislature's intent, made manifest by section 409.168, is that "no child remain in foster care longer than 1 year." Section 409.168(1), Florida Statutes.
In the instant case, the evidence shows that the mother made a concerted effort to comply with the various orders directing her to cease drinking alcoholic beverages, to obtain counseling for both alcoholism and parenting skills, and to obtain a stable job and home environment. We do not take issue with the trial court's exercise of its broad discretionary power to *389 determine what is in the best interest of T.W.S.: although not clearly articulated by the court, the record supports its apparent belief that the mother was not ready to regain custody of her son, despite its remarking on her apparent improvement. We do object, though, to the fact that no concerted effort was made to realistically work with the mother toward the end of reunification. Instead, the trial court apparently left T.W.S. in a permanent state of dependency (although the order is ambiguous as to whether it reaffirmed T.W.S.'s dependency status), and without the necessary supervision of H.R.S. That result was not an option available to the court under chapter 39. See In the Interest of K.H., 444 So.2d 547 (Fla. 1st DCA 1984).
On appeal, the mother challenges the order on several grounds, but because we find that throughout these proceedings there has been exhibited a total lack of compliance with the statutory requirement of a performance agreement, and with the Interstate Compact, we need not reach all of the issues raised. Instead, on the basis of noncompliance with the mandates established in sections 409.168 and 409.401, we must reverse the order terminating foster care placement, and direct the child be returned to Florida and H.R.S. supervision resumed. Upon remand, the court will again consider what opportunities remain for vigorously pursuing reunification of the child with either parent. If there are none, by law the proper course after so many years is not more foster care or perpetual reaffirmation of dependency, but permanent commitment for adoption.
REVERSED and REMANDED.
WENTWORTH and THOMPSON, JJ., concur.