WENTWORTH, Judge.
By this appeal review is sought of an order of permanent commitment for the adoption of two minor children. The natural mother of the children argues that she should be given an opportunity to enter into a performance agreement with the Department of Health and Rehabilitative Services (HRS) before the permanent commitment of the children. We agree and reverse the order appealed.
In 1980 the mother released custody of the children here in question to their father, her former husband. After three reports of neglect by the father and his subsequent imprisonment for parole violation, the children were adjudicated dependent and placed in temporary foster care in December of 1981. An agency plan was filed encouraging contact between the father and the children.
*112 On June 18, 1982, the court ordered[1] continued foster care, without factual findings, following submission of an HRS report that “According to Alabama authorities, this mother is not financially or emotionally stable enough” to care for the children. On July 2, 1982, an agency plan was filed “in lieu of a written performance agreement with [the father],” stating an aim to “assure the reuniting of [the children] with his/her family or to assure another permanent plan” by steps including “(1) Request home study from the Alabama Pensions and Securities of [the mother],” and scheduling bi-weekly visits with the father at his correctional center.
A December 10, 1982, order on petition for review again continued foster care, apparently based on an HRS report that the father’s whereabouts were unknown since his release in October; that the mother had been contacted by the Alabama agency but “did not seem interested in following through with home study.” The testimony from HRS in the present record concedes it obtained no written report, did not know if a study was done, and relied on telephone information and a letter from the mother stating that Alabama required better housing and employment before doing a home study or approval. She also testified that the Alabama officers said they could not give her the children’s address; that her letters left in the Alabama office were not mailed; and that all but two letters sent by her to the children, to an address she got from her former husband, were returned unopened. The agency plan was modified to undertake to “keep in touch with mother to determine her interest and ability to care for children and desire to participate in Performance Agreement.” On December 10, 1982, there was also filed a permanent placement plan repeating objectives of a paternal performance agreement and a current home study for the mother. The copy sent to the mother's Alabama address was returned unclaimed under date of December 11, 1982. The mother testified that she had then moved with her husband and younger children, briefly to Jacksonville and then to his family home in Kansas because his mother needed help. She said she did not report the move because they had no housing and knew they were returning to Florida. They moved to Jacksonville in May 1983 and were later located there by HRS.
In May 1984 HRS sent the appellant mother a notice of intent to file a petition for permanent commitment based on abandonment. The mother then wrote to the children and, after obtaining advice through legal aid, requested a performance agreement and moved to stay the hearing pending such agreement. The record reflects no formal action on the request, and the motion was denied at the final hearing. Testimony at final hearing in October 1984 was that “Just because ... we had found her and she was writing to the children that was not a ground to withdraw the petition” for permanent commitment. The order of permanent commitment was entered on the basis of the father’s noncompliance with performance agreements, and an abandonment by the mother.
Florida’s statutory plan for the placement of dependent children is contained in § 409.168, Florida Statutes, and details a process by which a dependency adjudication may be followed by a period of temporary foster care, at which time a performance agreement with the parents is required. Section 409.168(3)(a) expressly provides that:
In each case in which the custody of the child has been vested in the social service agency and the child has been placed in foster care, a performance agreement shall be prepared within 30 days after the placement and shall be submitted to the court.
1. The purpose of a performance agreement shall be to record the actions to be taken by the parties involved in order to *113 quickly assure the safe return of the child to his parents or, if such return is untenable, the permanent commitment of the child to the department or licensed child-placing agency for the purpose of finding a permanent adoptive home.
The statute is plainly intended to insure clear and definite progress toward a permanent resolution of the child’s dependency. A performance agreement was mandated in In the Interest of C.T.G., 460 So.2d 495 (Fla. 1st DCA 1984), as the statutory mechanism for HRS to identify to the parent the problems or unsatisfactory conditions in the home, and to assist the parent to remedy those conditions. The performance agreement is therefore a means to provide notice to the parent of the specific conditions which must be met for termination of foster care, and notice that failure of compliance may serve as the predicate for permanent commitment.
The present case does not involve a situation where lack of an agreement may result from circumstances entirely beyond control of HRS and to which it contributes in no way. Nor has HRS deemed the circumstances at any point to be so egregious as to preclude any potential for a performance agreement and require immediate permanent commitment for irremediable abandonment, abuse, or neglect. Gerry v. Aulls, 457 So.2d 598 (Fla. 5th DCA 1984), review pending, Case No. 84,573 (Fla.1985). The opinion in In the Interest of C.B., 453 So.2d 220 (Fla. 5th DCA 1984), indicates that in such a situation a performance agreement may not be essential prior to permanent commitment. But in the present case the children were placed in temporary foster care, and the commitment order against appellant rests on events occurring thereafter. A performance agreement is therefore required, as the prescribed method for measuring abandonment as a condition for permanent commitment. We conclude that in the circumstances presented the court erred in entering a permanent commitment order without affording appellant an opportunity to participate in a performance agreement as mandated by § 409.168, Florida Statutes.
The order appealed is reversed.
ERVIN, C.J., and BARFIELD, J., concur.

. The order reflects that the hearing on petition for review was attended only by the father and an HRS representative, although testimony by the mother in the current record indicates she was notified and attended.