837 So.2d 1098 (2003)
L.F., The Mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES and J.F., Appellees.
Nos. 4D01-4152, 4D02-1498.
District Court of Appeal of Florida, Fourth District.
February 19, 2003.
*1099 Kathleen K. Pena, Fort Lauderdale, for appellant.
Ileana Haedo of Ileana Haedo, P.A., Fort Lauderdale, for appellee J.F.
WARNER, J.
The mother appeals a judicial review order in a dependency case which "reunified" her with her children by leaving them in the custody of their father/stepfather with visitation to the mother. She contends that the trial court used the wrong legal standard in determining the reunification issue. While we conclude the court did not err with respect to the natural child of the father, the court did err in awarding custody of the stepson to the father. As a consequence, we reverse the entire order for reconsideration.
The mother's two minor children, N.R. and T.F., were placed in the Department of Children and Family Services' ("Department") shelter care when they were discovered home alone in unsanitary conditions. The mother also was alleged to have a substance abuse problem. The initial shelter order placed the children with a maternal aunt and directed a home study of the father/stepfather's home as well as substance abuse and parenting evaluations and treatment for the mother. The father, J.F., is the natural father of T.F. and the stepfather of N.R. Within six months the father/stepfather was granted temporary custody of the children to live with him in Georgia. The maternal grandmother and aunt also live in Georgia. At subsequent reviews, the mother was ordered to have a psychological evaluation, follow the psychologist's recommendations, and engage in individual and family counseling. The Department agreed to delay filing a dependency action based upon the mother's agreement to accept services.
A year after the children's removal from the home, the mother had not fully complied with the case plan. However, the Department agreed to hold the petition for dependency in abeyance if the mother would obtain a psychological evaluation, complete a parenting class, and participate in individual and family counseling through the children's therapist in Georgia. Visitation and telephone calls to the children would remain supervised. The children remained in the care of the father/stepfather, and the mother's boyfriend was to have no contact with the children unless approved by the therapist. Although reunification was scheduled for May 2000, the case plan was extended, reunification with the mother remaining the goal. The court maintained temporary custody with the father/stepfather.
When the case came before the court again, the mother still had not completed her tasks and had given birth to a third child. The court found the mother was not in substantial compliance with her case *1100 plan and adjudicated the children dependent as to the mother.[1] It also ordered the Department to request the State of Georgia to accept jurisdiction, as the children had been living in a stable environment in that state for the past two years.
The mother appealed the court's order of adjudication to this court, and the mother and the Department engaged in mediation of the case. The father was not notified of the mediation. The mother and the Department made an agreement at mediation as follows: (1) the adjudication of dependency should remain, and the mother would dismiss her appeal; (2) the mother's boyfriend should submit to random drug tests within the next forty-five days, and if those tests proved negative, the Department would recommend to the court immediate reunification of the children with the mother in the State of Florida; (3) upon reunification, the mother and children would submit to family counseling provided by the Department.
The mediation agreement was submitted to the trial court for approval before a successor judge to the judge entering the order adjudicating the children dependent. At the hearing, the father was present and objected to the reunification with the mother, as the children were doing well in Georgia. He expressed his desire to appeal any order reunifying the children with the mother. Eventually, the attorney for the Department told the court that while it agreed to recommend reunification if the boyfriend's drug tests were clear, it did not agree to reunification. Whether or not the children would be returned would still be the court's decision. The court agreed that a hearing was required before ordering reunification. In its order, the trial court "accepted" the mediation agreement and ordered continued temporary custody with the father.
At a hearing about a month later, at which the father, maternal grandmother and aunts were present, all opposing reunification with the mother, the Department pointed out that no disposition hearing had been conducted in the case. The judge then required the Department to gather the psychological reports on the children, stressing that she strived to assure her rulings were always in the best interests of the children.
At the next review hearing, the court had reviewed the psychological reports, which indicated that the children were very resistant to leaving Georgia. The court also heard from the children's psychologist in Georgia who testified that contact between the mother and children was difficult. The psychologist advised the court that both the short-term and long-term effects of splitting the children apart in a custody determination would be "psychologically devastating to them." He also explained that the mother had not been consistently compliant in reintegration with the children either through telephone calls or visitation. Ultimately, he opined that attempting to reunify the children into an environment with the mother that they felt was unsafe, based upon their prior experience, would be very detrimental in the short-term, creating fear and anxiety which may not be resolved during the developmental years. He was less sure about the long-term effects, as those would depend upon the intervention services provided. The court also talked with the children. At the close of the hearing, the court continued custody with the father while evaluations of the mother and her boyfriend were conducted.
Another hearing was held where the parties reviewed the terms of the proposed *1101 disposition order. The mother objected to the goal of "maintain and strengthen current placement" in addition to reunification, contending the mediation agreement's sole goal was reunification. The court disagreed, believing there to be a dual goal of "reunification/maintain and strengthen," stating the issue was "who is ultimately going to have primary custody." The court also expressed that shared custody between the parents was an option. The court continued custody with the father but allowed for the children to visit the mother in Florida for about two weeks.
Ultimately, a disposition hearing was held. At that hearing, the court was told that while the children enjoyed their visit in Florida with the mother, they had concerns about her conduct and did not feel safe in her home. The children continued to thrive in Georgia and obviously preferred it to Florida. Although the children were to have joint therapy sessions with a local psychologist and their Georgia psychologist while they were in Florida, these did not occur. The mother offered no explanation for this deficiency. Moreover, no report was received from the Florida psychologist.
In ruling on the matter, the court noted the case had come down to a custody battle. The court ordered custody to remain with the father with the mother to have visitation as often as was feasible for her, based upon a visitation schedule which the parties would work out. When the mother's attorney objected that the mother was not being reunited with the children, the court interrupted and stated that she was being reunited by the court's award of joint custody with primary residency being with the father. The court also refused to separate the children, although the older boy was not the natural son of the father, nor was he adopted by the father. It entered its second order which included a case plan goal of "reunification/maintain, strengthen placement." It ordered the parties to agree on a visitation schedule, which they did. Once the visitation schedule was established, the court terminated protective supervision by the Department. Jurisdiction was retained until the minors' majority. The mother appeals this order terminating supervision, contending the trial court failed to follow the statutory procedures and applied the wrong standard in determining custody.
The mother's arguments assume the court was required to reunite the children with the mother based upon the mediated settlement agreement. We disagree. When the trial court entered its order adjudicating the children dependent, it did not conduct a disposition hearing. During the appeal of the adjudication order, the mother and the Department agreed on a plan for the mother to obtain the Department's reunification recommendation. However, at the hearing when the court "accepted" the mediation agreement, the Department clearly agreed to make only a recommendation. The ultimate determination on reunification would be for the trial court. After obtaining the necessary information for a disposition order and conducting a hearing, the court quite clearly rejected reunification as the only goal. Instead, the judge adopted a dual goal of reunification and strengthening/maintaining the current placement. A goal of strengthening placement with the father rather than reunifying the child with the prior custodial parent is permissible. See F.M. v. Dep't of Children & Families, 807 So.2d 200, 201 (Fla. 4th DCA 2002).
Under the dependency statutes the court has many options for placement of a dependent child. It can require placement under the protective supervision of the Department in the home of one or both of the parents, with a relative, with another *1102 adult approved by the court, or in the custody of the Department. See § 39.521(1)(b)3, Fla. Stat. (2002). In this case, the court chose to place the child with "a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the jurisdiction of the court." § 39.521(3)(b). That placement continued throughout these proceedings. Where such placement is ordered, the court has two options:
1. Order that the parent assume sole custodial responsibilities for the child. The court may also provide for reasonable visitation by the noncustodial parent. The court may then terminate its jurisdiction over the child. The custody order shall continue unless modified by a subsequent order of the circuit court hearing dependency matters. The order of the circuit court hearing dependency matters shall be filed in any dissolution or other custody action or proceeding between the parents and shall take precedence over other custody and visitation orders entered in those actions.
2. Order that the parent assume custody subject to the jurisdiction of the circuit court hearing dependency matters. The court may order that reunification services be provided to the parent from whom the child has been removed, that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court jurisdiction, or that services be provided to both parents, in which case the court shall determine at every review hearing which parent, if either, shall have custody of the child. The standard for changing custody of the child from one parent to another or to a relative or another adult approved by the court shall be the best interest of the child.
§ 39.521(b)(1)-(2). The statute further provides for protective supervision by the Department to continue until the court terminates it, and such supervision "shall be terminated by the court whenever the court determines that permanency has been achieved for the child." § 39.521(3). The trial court clearly concluded that permanency had been achieved for the children when it terminated protective supervision.
As to T.F., the natural child of the father, the court was within its discretion to use the best interest standard to determine which parent should have custody of the child. While we disagree that "reunification," as it is used in Chapter 39, is accomplished where only visitation is granted to the parent, the trial court could appropriately find the father was entitled to custody of T.F., his daughter.[2]
That the older child, N.R., is not the natural son of the father, further complicates this case. Under the dependency statutes, a stepfather is neither a "parent" nor a "relative." See § 39.01(49), (60), Fla. Stat. (2002). Therefore, the foregoing statutory options were unavailable to determine custody for N.R. Instead, N.R.'s placement with the father was an "out of home" placement. Section 39.521(3)(c) allows the court to do the following:
If no fit parent is willing or available to assume care and custody of the child, place the child in the temporary legal custody of an adult relative or other adult approved by the court who is willing to care for the child, under the protective *1103 supervision of the department. The department must supervise this placement until the child reaches permanency status in this home, and in no case for a period of less than 6 months. Permanency in a relative placement shall be by adoption, long-term custody, or guardianship.
First, there was no finding in any of the orders that the mother was unfit. Second, it appears that "permanency status" with the stepfather is not available for N.R. under the statutory scheme. Section 39.621 provides:
(1) When the court has determined that reunification with either parent is not appropriate, then the court must make a permanency determination for the child.
(2) Adoption, pursuant to chapter 63, is the primary permanency option available to the court. If the child is placed with a relative or with a relative of the child's half-brother or half-sister as a permanency option, the court shall recognize the permanency of this placement without requiring the relative to adopt the child.
(3) The permanency options listed in the following paragraphs shall only be considered by the court if adoption is determined by the court to not be in the child's best interest, except as otherwise provided in subsection (2):
(a) Guardianship pursuant to chapter 744.
(b) Long-term custody.
(c) Long-term licensed custody.
(d) Independent living.
The permanency placement is intended to continue until the child reaches the age of majority and shall not be disturbed absent a finding by the court that the circumstances of the permanency placement are no longer in the best interest of the child.
The court made no finding that reunification of N.R. with the mother was "inappropriate." Moreover, adoption does not appear to be an option. See Chapter 63, Fla. Stat. (2002). N.R. is not a candidate for "long-term custody," as the statute requires that the parent fail to substantially comply with a case plan before the court can consider long-term custody with a non-relative. See § 39.622, Fla. Stat. (2002). Here, the court made no finding that the mother failed to substantially comply with the case plan. The statute also requires the submission of a case plan that does not include reunification as a goal and describes the responsibilities of the adult having long-term custody. See § 39.622(1)-(2). In this case, reunification was a dual goal of the case plan. We have to conclude that permanent placement was not authorized on this record.
It is apparent that the court was trying to do what was best for these children. Their lives in Georgia are happy and stable. They openly expressed their desire to remain with their father/stepfather and their fear in returning to their mother. The statutory scheme would allow the father to retain custody of his own daughter. But we have searched the statutes and can find no authority for the trial court to grant permanent custody of N.R. to the father, even though the psychologist testified that both children would be psychologically harmed if they are split up. Here, the legislature has not given the trial court the power to achieve this sensible solution, even though one of the legislative purposes of chapter 39 is "[t]o make every possible effort, when two or more children who are in the care or under the supervision of the department are siblings, to place the siblings in the same home." § 39.001(1)(k), Fla. Stat. (2002).
Although we have concluded that the court was within its discretion in ordering permanent custody of T.F. with her father, the trial court could not do the same for N.R. without determining that the mother *1104 had failed to substantially comply with the case plan.[3] Because the trial court was particularly concerned with the children remaining together, given the testimony of psychological harm if they were separated, we reverse the orders in their entirety for the court to reconsider this case. Unless the trial court determines that the mother failed to substantially comply with a case plan, or she agrees to custody of both children with the father as being in the children's best interest, thus consenting to long-term custody of N.R. by the stepfather, then the court cannot permanently place N.R. with the father. In redetermining this issue, the trial court may consider the development of a new case plan while it decides the ultimate disposition in this case.
Reversed and remanded for further proceedings.
KLEIN and STEVENSON, JJ., concur.
NOTES
[1] Although no copy of the petition for dependency was provided to this court, we assume that one was filed based upon a statement in the motion for rehearing of the court's order.
[2] The parties argue as to whether section 39.522 applies, dealing with postdisposition changes of temporary legal custody, not the permanent custody determination which was made in this case. Unlike S.J. v. Department of Health & Rehabilitative Services, 700 So.2d 71 (Fla. 1st DCA 1997), upon which the mother relies, there was never a postdisposition change of custody. The father has had custody of the children for the past four years.
[3] There is evidence that the mother was not communicating with the children and was not participating in family therapy. The trial court never determined whether that constituted substantial non-compliance.