960 So.2d 836 (2007)
L.R., the mother, Appellant,
v.
J.F., the father, Appellee.
No. 4D06-4003.
District Court of Appeal of Florida, Fourth District.
July 5, 2007.
*837 L.R., Dania, Pro Se.
J.F., Cherrylog, GA, Pro Se.
TAYLOR, J.
L.R., the mother, sought a change of custody of her minor daughter, T.F., who had been living with her father, J.F., in Georgia since the Broward County Circuit Court entered dependency orders between 1999 and 2003. The mother requested the court to allow T.F. to remain with her following her summer visitation, instead of returning to live with her father. At the custody hearing, the mother requested the court to appoint an attorney to represent her. The court denied her request for appointed counsel, concluding that this matter was no longer a dependency case because protective supervision had been terminated. The trial court also declined the mother's request to speak to T.F. at the hearing about her desire to live with the mother. We reverse and remand for further proceedings, with directions to the trial court to consider the mother's financial eligibility for appointed counsel and to permit T.F. to testify at the new hearing.
T.F. was born to the mother and father during their marriage. The father also acted as stepfather to the mother's natural son, N.R.[1] On September 22, 1998, the Florida Department of Children and Families (DCF) filed a shelter petition with respect to the two minor children. DCF alleged that the mother had a substance abuse problem and had temporarily left the children with her sister in Broward County so that she could go on a "roadtrip" to the Keys. The mother had not returned, and the father was in Georgia at the time.
After a brief placement with a relative, on February 5, 1999, the trial court in the *838 dependency proceeding gave permission for the two minor children, T.F. and N.R., to live with the father in Georgia. On March 2, 1999, the parties were divorced in the State of Georgia. The divorce decree stated that an action relating to custody was pending in Broward County, Florida (referring apparently to the dependency proceeding), and thus, the Georgia court had no jurisdiction to decide the custody issue.
On April 7, 1999, the Florida court extended the father's temporary custody of the children. On November 22, 1999, the parties entered into a stipulated case plan, which provided for the children to remain with the father in Georgia under protective supervision by the appropriate family agency in Georgia. This order was extended by orders entered on February 14, 2000 and May 15, 2000.
On June 12, 2000, the Florida dependency court found that the mother was not in substantial compliance with her case plan and adjudicated the children dependent as to her. The order provided that the children remain in the temporary custody of the father. After appellate mediation, the parties entered into a settlement stipulation, which left the children in the temporary custody of the father. The court issued orders extending the father's temporary custody on March 1, 2000, June 8, 2001, and August 17, 2001.
In a dependency order dated March 19, 2002, the court left the children in the custody of their father and granted the mother visitation during the children's spring break, for two two-week periods during the summer, and on alternating holidays. The court also concluded that permanency had been achieved for the children and terminated protective supervision. It retained jurisdiction over the minor children until their age of majority.
The mother appealed the order. In L.F. v. Department of Children & Family Services, 837 So.2d 1098, 1102 (Fla. 4th DCA 2003), we concluded that the trial court could grant the father custody of T.F., his natural daughter, but there was no basis for granting him custody of N.R., his stepson. Id. Noting the trial court's concern with keeping the children together, given the testimony of psychological harm if they were separated, we reversed the prior orders in their entirety and remanded the case for the court to reconsider all custody and visitation issues concerning the minor children.
On August 8, 2003, the trial court transferred custody of N.R., the stepson, to the mother. The record does not show that the court entered an order awarding custody of T.F. to the father. T.F. simply remained with the father in Georgia without further court order. In an order dated December 12, 2003, the trial court stated that DCF's protective supervision would terminate on January 21, 2004. It added that, "The father/stepfather's ore tenus motion to terminate jurisdiction as to the child [T.F.] is denied as this court has retained jurisdiction on the children."
The record remained silent for nearly three years, until the mother wrote the trial judge on August 1, 2006, requesting an emergency hearing to re-open the case concerning her daughter. In the letter, she stated that T.F. had exhibited suicidal tendencies through self-mutilation and was in need of psychological counseling as a result of a prior sexual assault and inappropriate behavior by an adult male family friend. The mother requested that her prior attorney in the dependency proceeding be re-appointed to represent her.
The father filed an "Emergency Verified Motion for Return of Minor Child and Pick-up Order" dated August 14, 2006. In his motion, he alleged that the mother had *839 wrongfully refused to return the daughter at the end of her summer visitation. He further alleged that the mother had similarly refused to return the child following five previous visitations. The father did not serve his motion on DCF.
The trial court held a hearing on September 5, 2006. The father was represented at the hearing by a special public defender, but the mother appeared pro se. At the hearing, the mother asked the trial court to appoint her a lawyer. The court refused to do so, stating, "This is not dependency." The court also declined the mother's request for the court to speak directly with the daughter about her desire to remain in Florida.
DCF did not appear or participate in the hearing. After hearing testimony of the mother and father, the trial court entered a written order granting the father's motion that T.F. be immediately returned to his custody. The mother filed an appeal pro se, in which she raised four procedural points. We reverse as to two: that the trial court erred in not appointing an attorney to represent her in this proceeding and that the trial court erred in refusing to hear from T.F.
A parent has a constitutional right to counsel in any dependency proceeding which "can result in permanent loss of parental custody." S.B. v. Dep't of Children & Families, 851 So.2d 689, 692 (Fla.2003). Although DCF chose not to participate in these proceedings because its protective supervision terminated some time ago, we believe this matter continues to qualify as a dependency proceeding. We could find nothing in the record to suggest that the custody orders entered in this case resulted from any court proceedings other than this dependency case.
The dependency statute states unequivocally:
Parents must be informed by the court of their right to counsel in dependency proceedings at each stage of the dependency proceedings.
§ 39.013(1), Fla. Stat. (2006). The trial court may elect to retain jurisdiction over a child even after protective supervision has been terminated, until the child reaches the age of majority. See § 39.013, Fla. Stat. (2006). The trial court elected to retain jurisdiction over T.F.
In 2006, the legislature added section 39.621(9). It provides:
(9) The permanency placement is intended to continue until the child reaches the age of majority and may not be disturbed absent a finding by the court that the circumstances of the permanency placement are no longer in the best interest of the child. If a parent who has not had his or her parental rights terminated makes a motion for reunification or increased contact with the child, the court shall hold a hearing to determine whether the dependency case should be reopened and whether there should be a modification of the order. At the hearing, the parent must demonstrate that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by the modification.
Here, the record does not appear to contain a permanent placement of T.F. After remand from the first appeal, T.F. just remained with her father without any court ruling on her permanent status. In any event, whether or not we consider the mother's motion an attempt to seek reunification or increased contact with T.F. under the above statutory provision, we view this matter as a stage of the dependency proceeding to which the right to counsel attached.
The mother also argues on appeal that the trial court erred in excluding T.F. *840 from the hearing and not speaking to her regarding her desire to remain with the mother in Florida. Juvenile Procedure Rule 8.255 supports the mother's position. Subsection (b) of the rule makes clear that a child has a right to be present in juvenile matters "unless the court finds that the child's mental or physical condition or age is such that a court appearance is not in the best interest of the child." No such finding was made below. Moreover, in asking the trial court to speak with her daughter, the mother was clearly trying to call the child as a witness. Subsection (d)(1) of the rule states that a child "may be called to testify in open court by any party to the proceeding or the court, and may be examined or cross-examined." Fla. R. Juv. P. 8.255(d) (2006). It was error for the court to refuse to hear from the child.
For the reasons stated above, we reverse and remand with directions to the trial court to consider the mother's financial eligibility for appointment of counsel and to hold a new hearing on her request for a change in custody. T.F. may attend the hearing and be called as a witness.
Reversed and Remanded.
POLEN and STEVENSON, JJ., concur.
NOTES
[1] In this opinion, we refer to J.F. simply as "father," although he is a father to T.F. and a stepfather to N.R.